**IN THE FEDERAL COURT OF THE MIDDLE DISTRICT, ALABAMA**
**EASTERN DIVISION**

RECEIVED

2014 JAN -2 P 1: 39

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JONATHAN CAGLE | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) |
| JILL RUBLEY, DR. PAUL JUNGNICKEL, | ) |
| KRISTEN HELMS, JAN KAVOOKJIAN, | ) |
| DAVID RIESE, DEAN R. LEE EVANS, | ) |
| JESSICA STARR, | ) |
| AUBURN UNIVERSITY HARRISON | ) |
| SCHOOL OF PHARMACY, | ) |
| AUBURN UNIVERSITY, | ) |
| FICTITIOUS PARTIES A - C | ) |
| | ) |
| DEFENDANTS. | ) |

CASE NO.: 3:14-cv-004

**DEMAND FOR JURY TRIAL**

---

## COMPLAINT

---

### PARTIES

**COMES NOW** the Plaintiff Jonathan Cagle, by his attorneys, Eversole Law Firm, LLC, Steven D. Eversole, Adam A. Bollert, James D. Fancher, and Sam P., Dixon III, for his Complaint against Defendant Auburn University Harrison School of Pharmacy, Auburn University, Jill Rubley, Dr. Paul Jungnickel, Kristen Helms, Jan Kavookjian, David Riese, Dean Lee Evans and Fictitious Parties in the above-styled action and, as a basis for relief hereinafter prayed for, states as follows:

### NATURE OF THE ACTION

1. By this action, Cagle seeks to recover damages for, *inter alia,* Auburn's breach of contract arising out of Auburn's failure to follow its own policies and procedures

1

regarding student disciplinary actions and its and Dr. Paul Jungnickel's wanton failure to abide by the duty and obligation to adhere to such policies and procedures in a good faith, professional and in a regular, unbiased manner.

2. Cagle is a former pharmacy student at the Auburn Harrison School of Pharmacy from Fall of 2008 to Fall of 2011.

3. On or about mid-November, 2011, the Plaintiff was accused of violating the Auburn University Harrison School of Pharmacy Code of Ethical and Professional Conduct, for comments made about a fellow student on an unaffiliated on-line message board. The Auburn University Student Conduct Board, charged with adjudicating the allegations against Cagle, failed to follow Auburn's policies for disciplinary proceedings, conducted a fundamentally unfair hearing, and defamed Cagle by proclaiming him guilty of knowingly producing false evidence against another member of the Pharmacy School's student-body, proclaiming him guilty of engaging in activity which disrupts or obstructs the teaching of Harrison's School of Pharmacy (hereinafter "HSOP"), and violating the "Faculty Student Covenant" including treating faculty, staff, students and employees of HSOP and Auburn University with disrespect through inappropriate behavior or communication. As a result, Dr. Jungnickel, Jill Rubley, David Riese, Dean Evans, Kristen Helms, fictitious parties, as well as the Honor Board, materially harmed Cagle by contributing and irresponsibly rushing to judgment to expel Cagle from Auburn University's Harrison School of Pharmacy.

4. Cagle is entitled to have the Honor Board's decision vacated and to receive actual and punitive damages for Auburn's false, malicious and injurious actions and statements.

2

5. On information and belief, the Defendants, Auburn University School of Pharmacy, Auburn University, Dr. Paul Jungnickel, Jill Rubley, Jan Kavookjian, Kristen Helms, David Riese, and any other fictitious parties that could not be discovered at this time through reasonable diligence, are individuals and/or academic entities, whose duties and responsibilities primarily entail providing and facilitating collegiate-level education.

6. Fictitious Defendants A-C are those persons or entities listed as Defendants in the caption of this Complaint and the Fictitious Party Defendants were at all times relevant to the allegations made in this Complaint, either residents of LeeCounty, Alabama, and/or are involved as students, faculty, administration or otherwise participate in education system at Auburn University in Lee County.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Cagle's claims pursuant to 28 U.S.C. §1332(a)(1).

8. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and involves several issues of federal questions.

9. Cagle is a citizen of the State of Alabama and resides in Madison County.

10. Auburn is a public state university located in Auburn, Alabama.

11. This Court has personal jurisdiction over Auburn pursuant to Rule 4(c) of the Federal Rules of Civil Procedure.

12. Auburn, *inter alia,* transacts business in Alabama and caused tortuous injury by an act that occurred in Alabama.

13. The afor-mentioned Defendants, as well as fictitious parties, upon information and belief, are citizens and entities residing in Alabama.

3

14. This Court has personal jurisdiction over, both the named, as well as the fictitious parties, pursuant to Rule 4(c) of the <u>Federal Rules of Civil Procedure</u>.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

**FACTUAL ALLEGATIONS**

16. Plaintiff Jonathan Cagle was a graduate student in Auburn University's School of Pharmacy from the Fall of 2008 through the Fall of 2011.

17. On or about mid-November, 2011, the Plaintiff was accused of violating the following sections of the *Auburn University Harrison School of Pharmacy Code of Ethical and Professional Conduct*:

> a. **3.02.2:***Knowingly producing false evidence (or rumors) against another or providing false statements or charges in bad faith against another. Knowingly publishing or circulating false information concerning any member of the University faculty, student body or community.*
> b. **3.02.3:***Contributing to, or engaging in, any activity which disrupts or obstructs the teaching, research or extension programs of HSOP or the University, either on the University's campus or at affiliated training sites.*
> c. **3.02.14:***Any violation of the "Faculty Student Covenant" including treating faculty, staff, students and employees of HSOP and Auburn University with disrespect through inappropriate behavior or communication.*

18. These offenses, which lead to the Plaintiff's subsequent expulsion, involved the posting of messages and/or comments on a message board that was in no way affiliated, directly or indirectly, with Auburn University.

19. The accusations brought against the Plaintiff involved comments which centered around one specific comment about a fellow student. This posting, which was basis of the Plaintiff's expulsion from the Pharmacy School, involved that mere comment on an

unaffiliated message board. This message stated that the Plaintiff did not know the Defendant, but had heard she had a reputation for "preying on young frat boys".

20. The Defendant, namely Harrison School of Pharmacy, then held a hearing regarding the said events. The Plaintiff was then hindered from producing all evidence for the purpose of exonerating these said violations of the Student Honor Code.

21. Furthermore, Cagle was _not_ informed of his right to having legal representation at the hearing.

22. The hearing was conducted in an inappropriate and prejudicial manner.

23. The Plaintiff alleges the Associate Dean of the Pharmacy School, namely Dr. Paul Jungnickel, had reported his conclusion before evidence could even be presented or the hearing was conducted.

24. Jan Kavookjian is a member of the faculty at Auburn; the student of which the allegations against Cagle were reported is the daughter of Ms. Kavookjian. The Plaintiff alleges that the mother of Jill Rubley, unfairly and maliciously used her influence as a member of the faculty, to unjustly have Cagle expelled from HSOP for minor conduct that does not rise to a justifiable level of expulsion.

25. Several students also involved in the message board comments, for which Cagle was expelled, reported to the Honor Board that Cagle's comments were "blown out of proportion" and these acts did not justify him being expelled from HSOP.

26. Plaintiff further alleges Jill Rubley, a named Defendant and past student of HSOP, purposefully, maliciously and willfully vandalized a faculty member's residence in an effort to falsify and portray Cagle's character in a negative light, with the intention to frame and expel Cagle from HSOP.

*Honor Board's Unfair Hearing:*

27. On or about November 18, 2011, the Honor Board imposed sanctions which resulted in Cagle's dismissal from Auburn University's Harrison School of Pharmacy.

28. The Board impermissibly placed the burden on Cagle to prove his innocence for these violations. The Board unjustifiably refused to hear evidence from Cagle, evidence which would have shown the context of the alleged violations and would have exonerated Cagle of such claims.

29. The Members of the Honor board had woefully inadequate training to handle such matters.

30. Cagle was not informed of the possible penalties and sanctions that could result in his dismissal from Auburn.

31. During the hearing, Cagle truthfully testified that he did not know Jill Rubley personally, and had not, in any way "knowingly" produced false information.

32. Cagle alleges that on the very same message board, Jill Rubley stated, "I'll warn Jonathan [Mr. Cagle] that Dean Evans told me today that Jonathan's out of here if he doesn't start coughing up names." Cagle further alleges this is evidence that the decision that Cagle was to be expelled came to fruition well before the Honor Board hearing ever occurred. Cagle alleges this is in direct violation of Section 14.04.1, which states, "[a]ny member of the Board Hearing Committee who has a prior opinion of guilt or innocence will be excused and the alternate member will hear the charge and a prior opinion of guilt or innocence will be determined." Cagle alleges that members of the committee who did have a prior opinion were not excused from the hearing, which created a prejudicial and unjust hearing.

6

33. Cagle sent a letter of apology for any words or comments that may have offended Jill Rubley and also appealed the Honor Board's decision through the appropriate procedures.

34. Cagle further alleges he was not afforded the procedural rights granted in Section 8.00 of the Auburn University Harrison School of Pharmacy Policies and Procedures Manual. Specifically, Cagle alleges that he was not informed in writing of the specific charge or charges made against him nor of any sanctions recommended by the charging party.

35. Cagle further alleges he was not allowed to present witnesses and sufficient evidence and to be present throughout the presentation of all witnesses and evidence at the hearing; this is in violation of 9.01.4 of the above-mentioned handbook.

## CLAIMS FOR RELIEF

## COUNT I: FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT (FERPA)

36. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 35 as if fully set forth herein.

37. As an institution that receives funds from the U.S. Department of Education, Auburn University complies with the Family Educational Rights and Privacy Act (hereafter referred to as "FERPA").

38. The Harrison School of Pharmacy, a professional school within Auburn University, has established certain policies and procedures in conjunction with FERPA guidelines.

39. FERPA defines student educational records as those records that are directly related to a student and maintained by an educational agency or institution.

40. According to the Auburn University Harrison School of Pharmacy Policies and Procedures Manual, student records shall include, but shall not necessarily be limited to, the following:

    a. Student files maintained in the Office of Academic and Student Affairs;

    b. University student records maintained on the OASIS System

    c. Course records maintained by individual instructors including copies of graded examinations or other assignments, including records that are maintained on WebCT;

    d. Pharmaceutical Care Ability Profiles for students completing advanced practice experience rotations.

41. FERPA regulations restrict student educational records access to only those University officials with a legitimated educational interest as related to their position within their institution.

42. According to the Auburn University Harrison School of Pharmacy Policies and Procedures Manual, the following individuals are deemed to have a legitimate educational interest, authorized to have access to student records for the specific purposes described below:

    a. Faculty and Staff in the Dean's Office;

    b. Office of Academic and Student Affairs;

    c. Office of Teaching, Learning and Assessment; and

    d. Office of Experimental Learning.

43. Furthermore, the Policies and Procedures Handbook specifically states that "[t]he Dean or Associate Dean for Academic and Student Affairs may authorize access to student

8

records for **faculty members and faculty committees** who have a legitimate need to review and evaluate such records.

44. Under FERPA, a school may not generally disclose personally identifiable information from an eligible student's education records to a third party unless the eligible student has provided written consent.

45. Cagle alleges the Defendants, specifically Dr. Jungnickel, were in direct violation of FERPA by disclosing private student academic information to another student, mainly Jill Rubley, without Cagle's consent.

## COUNT II: BREACH OF CONTRACT

46. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 45 as if fully set forth herein.

47. The Handbook is a valid, binding and enforceable contract between Auburn University's Harrison School of Pharmacy and Cagle.

48. The Handbook is and was supported by valid consideration.

49. Cagle fully complied with all of his obligations under the Handbook.

50. Harrison School of Pharmacy breached its obligations under the Handbook, *inter alia*, conducting a fundamentally unfair hearing, improperly placing the burden of proof on Cagle, failing to have the Board properly trained and prepared to adjudicate these allegations, failing to involve in the hearing someone unbiased and competent to testify about the comments on the above-mentioned message board, not providing Cagle with a competent advisor, rushing to a final judgment of Cagle before receiving the full testimony of involved parties, prejudicial and improper decisions about which witnesses

could and could not testify. Harrison School of pharmacy also did not limit repetitive testimony, discussion or witness material.

51. Cagle also alleges the Defendants intentionally revealed the names of the accused, witnesses and facts involved in an alleged violation of the Student Honor Code 3.02.11.

52. Cagle alleges the Defendants, specifically Dr. Jungnickel, revealed unauthorized information about students of HSOP that was private or confidential. Cagle claims this was a direct violation of 3.02.12 of the Student Honor Code.

53. Cagle has incurred, and will continue to incur, significant damage as a direct result of the Auburn University Harrison School of Pharmacy's breaches of the Handbook in an amount to be determined at trial.

## COUNT III

### 42 U.S.C. § 1983

54. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 53 as if fully set forth at length herein.

55. Title 42 § 1983 of the U.S. Code provides a mechanism for seeking redress for an alleged deprivation of a litigant's federal constitutional and federal statutory rights by persons acting under color of state law. Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983 (1996).

56. To establish a *prima facie* case under 42 U.S.C. § 1983, Plaintiff(s) must allege two

elements:

> a. "State Action"
> b. The action occurred "under color law"; and,
> c. The action is a deprivation of a constitutional right or federal
> statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); and,
> d. Caused actual damages.

57. When the Defendant is not a government employee, but is somehow linked to the

government, courts must question whether there was joint action, an intertwined

relationship, state encouragement, or a public function performed. *Martin A. Schwarz &*

*John E. Kirklin*, 1A Section 1983 Litigation: Claims & Defenses, § 5.14, at 538-43 (3d.

Ed. 1997). Here, the Plaintiff asserts that the individuals, both named and fictitious

parties, were acting under the "color of law" and deprived the Plaintiff of both

Constitutional and Federal Statutory rights.

58. Specifically, the Plaintiff asserts the violation of a right specifically identified under the

substantive component of the due process clause, the violation is complete at the time of

the challenged conduct and the § 1983 remedy is available. The Plaintiff further and

alleges a deprivation of a constitutionally protected interest in proprietary interest.

"Property interests are created from an independent source such as state law..."

*Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).*See, e.g. Wolff v.*

*McDonnell*, 418 U.S. 539 (1974) (holding that a state may create a liberty interest on the

part of inmates in the accumulation of good conduct time credits.)

59. Here, the Plaintiff alleges that he was unable to present the necessary evidence in his

Honor Code hearing sufficient to exonerate him from dismissal of the Harrison School of

Pharmacy. The Plaintiff alleges that the Honor Code hearing was arbitrary and

11

capricious, and this arbitrary expulsion from the Pharmacy School deprived the Plaintiff the opportunity to earn a living. Furthermore, due to this unjustifiable expulsion, the Plaintiff alleges he was unable to continue his graduate level education at another college or university necessary to embark and further his career ambitions.

60. The Plaintiff prays for both compensatory and punitive damages against one or all of the named/fictitious Defendants. A "[p]laintiff may be awarded punitive damages against an individual defendant 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves a reckless or callous indifference to federal protected rights of others." *Smith v. Wade,* 462 U.S. 30, 56 (1983).

61. Furthermore, legal relief may take the form of nominal, compensatory, as well as punitive damages "when § 1983 plaintiff seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 306 (1986).

62. In addition, the Plaintiff requests "special damages", which relate to specific pecuniary losses, such as "lost earnings, medical expenses, and loss of earning capacity" *See Carey v. Piphus,* 435 U.S. 247 (1978). Here, the Plaintiff suffered extreme mental and emotional distress attributable from his expulsion from the Pharmacy School; the Plaintiff had to seek both medical and psychological treatment, as well as suffered severe depression, due to such an arbitrary and reckless dismissal from Auburn University.

63. **WHEREFORE,** the Plaintiff requests that judgment be entered on Count III in his favor and against the Defendants for the Plaintiff's respective actual and consequential damages, for punitive damages, for costs, expenses and pre- and post judgment interest,

for attorney fees, and for such other and further relief as the Court shall deem just and proper under these circumstances.

## COUNT IV

### LIBEL PER SE- INJURY TO PERSONAL REPUTATION

64. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 63 as if fully set forth at length therein.

65. Defendants' statements concerned Cagle and were false.

66. Defendants' statements were widely published and not privileged in any manner.

67. Defendants' statements were made with reckless disregard of their truth or falsity and/or with malice.

68. Defendants' statements were libelous *per se* because they imported the charge of an indictable offense involving moral turpitude and injured Cagle's personal reputation.

69. Defendants' statements forever falsely taint and permanently damage Cagle as a student who was expelled from his university for comments that did not amount to falsity or disruptive conduct. Cagle has worked his entire life to develop his personal standing.

70. The Defendants, named and fictitious, committed libelous statements that were the proximate cause of actual harm to the Plaintiff.

71. In cases of libel, if the language used exposes the Plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation and pronounces it actionable *per se. Tonsmeire v. Tonsmeire,* 281 Ala. 102, 199 So.2d 645 (Ala. 1967). The Plaintiff alleges that the above-named and fictitious Defendants published defamatory statements of and concerning the Plaintiff; that these

statements were published to a third-party that was the proximate cause to both actual and foreseeable damages to the Plaintiff's reputation.

72. **WHEREFORE,** the Plaintiff requests that judgment be entered on Count IV in his favor and against the Defendants for his, the Plaintiff's, respective actual and consequential damages, for punitive damages, for costs, expenses and pre- and post-judgment interest, for attorney fees, and for such other and further relief as the Court shall deem just and proper under these circumstances.

## COUNT V

### LIBEL PER SE-INJURY TO PROFESSIONAL REPUTATION

73. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 72 as if fully set forth at length herein.

74. Defendants' statements concerned Cagle and were false.

75. Defendants' statements were widely published and not privileged in any manner.

76. Defendants' statements were made with reckless disregard of their truth or falsity and/or with malice.

77. Defendants' statements were libelous *per se* because it involved a criticism of his professional conduct and injured Cagle's professional reputation.

78. Defendants' statements forever falsely taint and permanently damage Cagle as a student who was expelled from his university for alleged misconduct regarding statements made about a fellow student that were not in violation of HSOP's Honor Code. Cagle has worked his entire life to develop both his personal standing in the community and his professional abilities.

14

79. **WHEREFORE** Defendants' statements permanently damage Cagle's professional reputation in Alabama and across the country. Due to an unjust expulsion, Cagle is unable to enroll and/or be accepted to another pharmacy school and will likely face difficulties in obtaining employment as a result of the Defendants' actions and false and defamatory statements, or, alternatively, professional companies that will be more hesitant to hire Cagle without his degree from an accredited pharmacy school as a result of the Defendants' actions and false and defamatory statements.

## COUNT VI

### LIBEL-RECKLESS DISREGARD/MALICE

80. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 79 as if fully set forth at length herein.

81. Defendants' statements concerned Cagle and were false.

82. Defendants' statements were widely published and not privileged in any manner.

83. Defendants' statements were made with reckless disregard of their truth and falsity and/or with malice.

84. Defendants' statements and conduct have caused Cagle to suffer severe emotional distress.

85. Defendants' had no reasonable grounds for believing the truth of their statements; and, Defendants relied on, at best, hearsay, circumstantial evidence and lies in making the statements.

86. Defendants failed and refused to consider exculpatory evidence.

15

87. Defendants' statements forever falsely taints and permanently damages Cagle's reputation as a student who was expelled from his university for an alleged violations that did not meet the standard of just expulsion.

88. Defendants' statements permanently damages Cagle's reputation in Alabama and across the country.

## COUNT VII

### LIBEL PER QUOD

89. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 88 as if fully set forth at length herein.

90. Defendants' statements concerned Cagle and indicated the existence of other facts which are defamatory.

91. Defendants' statements were widely published and not privileged in any manner.

92. Defendants' statements were made with reckless disregard of their truth or falsity and/or with malice.

93. Defendants' statements were libelous *per quod* because they were not reasonably subject to innocent interpretation and consisted of words that reasonably created a false implication.

94. Defendants' statements forever falsely taint and permanently damage Cagle as a student who was expelled from his university for conduct or words that did not amount to violations of the Student Honor Code.

95. Cagle suffered special damages because Defendants' statements forced Cagle to expend substantial funds to move from the Auburn area and find other inferior employment.

## COUNT VIII

## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

96. Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 95 as if fully set forth at length herein.

97. Plaintiff alleges that on or about mid-November, 2011, by arbitrarily dismissing the Plaintiff from the Auburn University Harrison School of Pharmacy, acted with the willful and malicious purpose with the intention to induce or otherwise cause a third person not to enter into or continue the prospective relationship, or, in the in the alternative, prevent the other from acquiring or continuing the prospective business relationship.

98. Plaintiff alleges there existed a valid business relationship, or, at the very least, a business expectancy, of which the Defendants had knowledge of the relationship or expectancy, and the Defendants intentionally interfered by inducing or causing a breach or termination of the relationship or expectancy.

99. As a result of the Defendants' wrongful expulsion of the Plaintiff, this conduct resulted in damage to the party whose relationship or expectancy has been disrupted. The Plaintiff is unable to gain admission to another pharmacy school, due to the reasons for this wrongful expulsion stated on his academic file.

100.      Plaintiff alleges the Defendants' conduct was the proximate cause of the resulting damages of:

      a.      The pecuniary loss of the benefits of the contract or the prospective relations;

      b.      Consequential losses for which the interference is a legal cause; and,

      c.      Emotional distress and actual harm to reputation for which it would be reasonably expected to result from the interference.

101.    **WHEREFORE,** Plaintiff demands judgment against each of the Defendants, both jointly and severally, including the Fictitious Party Defendants, in a sum to be determined by a jury that will fairly and adequately compensate the Plaintiff for all injuries and damages sustained, together with interest from the date of injury, attorneys' fees and costs of this proceeding. Further, Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff against each Defendant, and that it award in said verdict punitive damages to the Plaintiff in an amount which will adequately reflect the enormity of the Defendants' conduct and which will effectively prevent Defendants' other similar conduct in the future.

## COUNT IX

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/OUTRAGEOUS CONDUCT

102.    Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 102 as if fully set forth at length herein.

103.    The Defendants acted in a shocking, outrageous and extreme manner by, *inter alia,* a) conducting a flawed investigation, b) refusing to consider exculpatory evidence, c) refusing to adhere to or even consider the information, guidance, and advice of fellow students and/or participants of the message board, even after several written affidavits attesting to the over-blown statements and allegations against Cagle, and d) holding a fundamentally unfair and flawed hearing resulting in a decision that permanently damages Cagle.

104.    As a direct and proximate result of the Defendants' actions, Cagle has been publicly humiliated, felt ashamed, felt emotionally distraught, and felt violated. The

18

conduct of the Defendants demonstrated the intent to cause, or disregard of a substantial probability of causing, Cagle severe emotional distress.

105.    The Defendants' actions were a direct and proximate cause of Cagle's severe emotional distress.

106.    The Defendants are therefore liable to the Plaintiff for his actual and consequential damages.

107.    The Defendants' actions and inactions were accomplished willfully, wantonly, and/or with reckless disregard for the Plaintiff's rights, feelings, financial well-being, thus entitling the Plaintiff to recover from the Defendants, and in addition to the Plaintiff's actual and consequential damages, punitive damages in an amount sufficient to punish the Defendants for their egregious misconduct and to set an example for the community with respect to others who would contemplate similar misconduct.

108.    Cagle has incurred, and will continue to incur, significant damage as a direct result of the Defendants breaches of the Handbook in an amount to be determined by trial.

109.    **WHEREFORE**, the Plaintiff requests that judgment be entered on Count VIII in his favor and against the Defendants for actual and compensatory damages, for punitive damages, for costs, expenses and pre- and post-judgment interest, for attorneys' fees, and for such other and further relief as the Court shall deem just and proper under these circumstances.

## COUNT X

### SLANDER PER SE

110.     Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 110 as if

fully set forth at length herein.

111.     Cagle asserts that multiple defendants committed Slander Per Se.

112.     For Slander to be actionable per se, the defamatory statement[s] must impute an

indictable offense involving infamy or moral turpitude.

113.     Cagle asserts that multiple comments that imputed an indictable offense of

vandalism of a faculty members home.

114.     Defendants' statements concerned Cagle and were false.

115.     Defendants' statements were widely published and not privileged in any manner.

116.     Defendants' statements were made with reckless disregard of their truth and

falsity and/or with malice.

117.     Defendants' statements and conduct have caused Cagle to suffer severe emotional

distress.

118.     Defendants had no reasonable grounds for believing the truth of their statements.

Defendants relied on, at best, hearsay, circumstantial evidence and lies in making their

statements.

119.     Defendants failed and refused to consider exculpatory evidence.

120.     Defendants' statements forever falsely taint and permanently damage Cagle's

reputation as a student who was expelled from his university for an alleged violation that

did not meet the standard of just expulsion.

121.     Defendants' statements permanently damage Cagle's reputation in Alabama and across the country.

## COUNT X

### SLANDER

122.     Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 122 as if fully set forth at length herein.

123.     Defendants' statements concerned Cagle and were false.

124.     Defendants' statements were widely published and not privileged in any manner.

125.     Defendants' statements were made with reckless disregard of their truth and falsity and/or with malice.

126.     Defendants' statements and conduct have caused Cagle to suffer severe emotional distress.

127.     Defendants' had no reasonable grounds for believing the truth of its statements. Defendants relied on, at best, hearsay, circumstantial evidence and lies in making the statements.

128.     Defendants failed and refused to consider exculpatory evidence.

129.     Defendants' statements forever falsely taints and permanently damages Cagle's reputation as a student who was expelled from his university for an alleged violations that did not meet the standard of just expulsion.

130.     Defendants' statements permanently damages Cagle's reputation in Alabama and across the country.

## XII

## PUNITIVE DAMAGES

131.     Cagle repeats and re-alleges the allegations set forth in paragraphs 1 to 131 as if fully set forth at length herein.

132.     The Defendants' actions and inactions were accomplished willfully, wantonly and/or with reckless disregard for the Plaintiff's rights, feelings, financial well-being, thus entitling the Plaintiffs to recover from the Defendants, and in addition to the Plaintiff's actual and consequential damages, punitive damages in an amount sufficient to punish the Defendants for their egregious misconduct and to set an example for the community with respect to others who would contemplate similar misconduct.

133.     **WHEREFORE**, the Plaintiff requests that judgment be entered on Count IX in his favor and against the Defendants for his, the Plaintiff's, respective actual and consequential damages, for punitive damages, for costs, expenses and pre- and post-judgment interest, for attorney fees, and for such other and further relief as the Court shall deem just and proper under these circumstances.

**DATED:**    11-18-2013

**JONATHAN CAGLE**

**STATE OF ALABAMA** )
)
**COUNTY OF** CULLMAN )

Before me, the undersigned authority, personally appeared JONATHAN CAGLE who first being duly sworn says that the foregoing is true and correct.

SWORN TO and subscribed before me this the    18th    day of November, 2013.

NOTARY PUBLIC

MY COMMISSION EXPIRES:

*Attorneys for the Plaintiff:*

**STEVEN D. EVERSOLE**
ASB-7194-E68E

**ADAM A. BOLLAERT**
ASB-0323-D55B

**OF COUNSEL:**
**EVERSOLE LAW, LLC**
850 Corporate Parkway, Ste. 114
Birmingham AL 35242
Telephone: 205.981.2450
Facsimile:  205.981.2451

## JURY DEMAND

Plaintiff hereby demands a trial by struck jury of all issues in this action.

**OF COUNSEL**

23

## INDIVIDUAL DEFENDANTS TO BE SERVED AS
## STIPULATED BELOW:
## CERTIFIED MAIL

Jill Rubley
711 Petrie Road
Auburn AL  36830

Paul W. Jungnickel
Associate Dean & Professor
Admin – Pharmacy
1202D Walker Building
Auburn Univ, AL  36849

Kristen Helms
Associate Clinical Professor
Pharmacy Practice
2316 Walker Building
Auburn Univ, AL  36849

Jan Kavookjian
Associate Professor
Health Outcomes Res & Policy
Pharmacy Care System
Auburn Univ, AL  36849

David Riese
Associate Dean Rsrch/Grad Prog/Prof
4306 Walker Building
Auburn Univ, AL  36849

R. Lee Evans
Dean and Professor
Admin – Pharmacy
Auburn Univ, AL  36849

Jessica Starr
701 Princeton Avenue
Birmingham AL  35211

Auburn University
Office of the President
Auburn University
Auburn Univ, AL  36849